UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHELIA D.,                              )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        No. 1:22-cv-00048-JPH-TAB
                                        )
KILOLO KIJAKAZI Acting Commissioner of  )
Social Security,                        )
                                        )
            Defendant.                  )

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff Shelia D. appeals the Social Security Administration's denial of her application

for disability insurance benefits.  Plaintiff argues that the ALJ played doctor by failing to

properly acknowledge two opinions that effectively limited Plaintiff to sedentary work and that

the ALJ failed to provide proper reasoning or discuss the requisite elements when discrediting

Plaintiff's subjective statements.  However, the ALJ's decision reflects proper consideration and

analysis of both of the opinions that Plaintiff claims the ALJ did not properly acknowledge.  In

addition, the ALJ thoroughly discussed Plaintiff's subjective statements and found, under the

totality of the evidence presented, Plaintiff remained capable of work.  While the ALJ made a

couple factual errors, such as claiming that Plaintiff only attended one physical therapy session

when in fact, she attended four, Plaintiff has not shown how any alleged error actually harmed

her or would have otherwise resulted in a finding of disability.  For these reasons, the Court

should deny Plaintiff's request for remand.  [Filing No. 9.]

**II.    Background**

On October 28, 2019, Plaintiff protectively filed a Title II application for a period of

disability and disability insurance benefits, alleging disability beginning on April 1, 2019.

Plaintiff also filed a Title XVI application for supplemental security income.  The SSA denied

Plaintiff's claims initially and upon reconsideration.  Following a hearing, the ALJ determined

that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was

disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since April 1, 2019, the alleged onset date.  At step two, the ALJ determined that Plaintiff had

the following severe impairments: cervical spine degenerative disease with radiculopathy and

lymphadenopathy, diabetes mellitus (DM), left shoulder dysfunction, diabetic polyneuropathy,

asthma, and persistent depressive disorder with dysthymic syndrome with mild to moderate

anxious distress.  [Filing No. 7-2, at ECF p. 34.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  Before reaching step four, the ALJ

determined Plaintiff's residual functional capacity, or her remaining ability to work despite her

limitations.  The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20

C.F.R. § 404.1567(b), but with a long list of additional limitations:

> [Plaintiff] can never climb ladders, ropes, and scaffolds.  She can occasionally
> climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She can
> occasionally reach overhead, and occasionally push and pull.  She can frequently
> reach forward or to the side, handle, finger, and feel.  She can never operate foot
> controls.  She can have no more than occasional exposure to vibration,
> environmental irritants, and poorly ventilated areas.  She must avoid all uses of
> hazardous moving machinery and all exposure to unprotected heights.  She can
> perform work that does not involve driving or operating a motorized vehicle to

2

perform job functions.  She can perform unskilled work involving simple, routine, and repetitive tasks.  She can perform short cycle tasks, in which the same routine tasks are performed over and over according to set procedures, sequence, or pace.  She can perform work that does not involve complex decision-making or complex written or verbal communication.  She can perform unskilled work that can be learned in thirty days or less.  She can perform work independently with end of day production goals.  She can never count money or make change.  She can never perform tandem tasks or teamwork.  She can perform work that does not involve fast-paced assembly line production requirements.  She can have occasional brief interactions with supervisors, coworkers, and the general public.  She can tolerate no more than occasional routine workplace changes.  She can tolerate normal supervisory interaction, including, for example, performance appraisals, corrections, instructions, and directives as necessary.  She can tolerate interactions to receive instructions and for task completion of simple, routine, and repetitive work.  She can exercise judgment commensurate with the performance of simple, routine, repetitive work.

[Filing No. 7-2, at ECF p. 38.]  At step four, the ALJ concluded that Plaintiff had no past relevant work.  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including marker, garment sorter, and odd piece checker.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

## III.    Discussion

Plaintiff argues that the ALJ played doctor and erred in finding her capable of performing the standing and walking requirements of light work.  In addition, Plaintiff critiques the ALJ's subjective symptom analysis, arguing that the ALJ failed to provide any reasoning for discrediting Plaintiff's subjective statements.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions."  *Gedatus v. Saul*, 994 F.3d 893,

900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.    Playing doctor

Plaintiff claims that the ALJ played doctor by cherry-picking the opinions of consultative physicians Dr. Jason Powell and Dr. Jerryl Simmons. [Filing No. 9, at ECF p. 21.] As noted above, the ALJ found that Plaintiff remained capable of light work as defined in 20 C.F.R. § 404.1567(b), with additional limitations. [Filing No. 7-2, at ECF p. 38.] Light work requires the ability to stand or walk for roughly six hours in an eight-hour workday. *See* Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983). Plaintiff argues that Drs. Powell and Simmons opined that Plaintiff could sustain walking for only one block before needing to rest, and one opined that she could stand for only 10-15 minutes at a time, but the ALJ cherry-picked from these decisions and nevertheless found Plaintiff capable of light work. [Filing No. 9, at ECF p. 21.]

The ALJ's decision described both of these opinions in considerable detail. For instance, the ALJ recited Dr. Powell's opinion that Plaintiff "could lift and carry 5 to 10 pounds frequently, could stand for 10 to 15 minutes at one time before needing to change positions; could walk one block before needing to rest; could sit for 10 to 15 minutes before needing to change positions. . . ." [Filing No. 7-2, at ECF p. 40.] However, the ALJ found this unpersuasive because it was not supported by the results of Dr. Powell's physical examination of Plaintiff and was inconsistent with the medical evidence of record. [Filing No. 7-2, at ECF p. 40.] The ALJ's

explanation for why she did not find Dr. Powell's opinion persuasive was not as in depth as her summary of the opinion itself.  However, the ALJ need only articulate her reasoning at some "minimum level" that allows a reviewing court to following the ALJ's reasoning regarding the cited evidence.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Rather, in addition to the general reasons noted above, the ALJ provided a couple examples of how Dr. Powell's examination was unsupported by the results or inconsistent with the rest of the medical record.  For instance, the ALJ explained that while Dr. Powell limited Plaintiff to lifting only 10 pounds, Plaintiff showed no signs of reduced strength or impairment that would be exacerbated by occasionally lifting more.  [Filing No. 7-2, at ECF p. 40.] Similarly, the ALJ noted that a limitation to brief periods sitting down was consistent with Dr. Powell's physical examination of Plaintiff, which found only mild musculoskeletal abnormalities.  [Filing No. 7-2, at ECF p. 40-41.]  While the ALJ did not provide any further detailed reasoning for rejecting Dr. Powell's opinion specifically regarding her ability to walk or stand, the ALJ's decision provided the necessary roadmap.  For instance, the ALJ noted that while Dr. Powell found Plaintiff demonstrated reduced abduction in her hips and observed some difficulties walking, her knees, feet, and ankle were normal.  [Filing No. 7-2, at ECF p. 40.]  The ALJ provided a detailed summary of Dr. Powell's opinion to support her conclusion that the results of Dr. Powell's examination did not align with the extreme limitations he opined for Plaintiff.

In relation to Dr. Simmons, the ALJ noted Plaintiff's claim at that examination that she could walk one block.  The ALJ summarized Dr. Simmons' examination, noting that Plaintiff had no pain and had normal range of motion in her dorsolumbar spine.  In addition, Plaintiff's elbows, wrists, hips, and knees were within normal limits other than some swelling in her left

ankle. [Filing No. 7-2, at ECF p. 42.] Once again, the ALJ thoroughly discussed and reasonably

discounted this opinion as well.

The Commissioner also argues that Dr. Powell's opinion tracked exactly what Plaintiff

told her doctor she could do at the beginning of the exam, suggesting that Dr. Powell simply

accepted Plaintiff's subjective reports as true. [Filing No. 12, at ECF p. 8.] The Commissioner

relatedly claims that "[i]t does not appear" that Dr. Simmons conducted an independent exam of

Plaintiff's gait, which undermines his opinion. [Filing No. 12, at ECF p. 8.] However, nowhere

in the ALJ's decision does the ALJ explicitly proclaim a reason for discounting Dr. Powell's

opinion as being because it was too similar to Plaintiff's subjective complaints. Plaintiff rightly

points out in her reply brief that the Commissioner relies too much on post-hoc justifications.

[Filing No. 13.] The Court cannot consider justifications that were not relied upon by the ALJ.

*See, e.g., Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's

position with post-hoc rationale impermissible). Similarly, the ALJ did not comment on whether

or not Dr. Simmons actually conducted an independent exam of Plaintiff's gait. This portion of

the Commissioner's brief contains too many assumptions and is not helpful. Nevertheless, even

without this argument, the ALJ's decision is supported by substantial evidence for the reasons

noted.

At bottom, the ALJ's decision was reasonable—even if others could look at the same

evidence and reach a different conclusion. *See, e.g., Karr v. Saul,* 989 F.3d 508, 513 (7th Cir.

2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical

evidence, we will not substitute our judgment for that of the ALJ's by reweighing the

evidence."); *Roth v. Berryhill*, No. 17 C 50196, 2018 WL 6100904, at *4 (N.D. Ill. Nov. 21,

2018) ("Although Plaintiff may not agree with the ALJ's decision regarding how he viewed the

evidence, the ALJ addressed the evidence in his decision and build a logical bridge from the evidence to his conclusion.").  The Commissioner points out that the ALJ's decision indicates that she took into consideration the bulk, if not all, of the evidence Plaintiff relies on as further proof of her inability to perform light work.  In addition, Plaintiff ignores her own conflicting testimony regarding how long she could stand at a time.  At one point, Plaintiff claimed she could only do so for 15 minutes at a time, but at the hearing, she testified that she could stand for up to one hour.  [Filing No. 7-2, at ECF p. 73-74.]

Moreover, even if the ALJ's decision is flawed in this regard, any error is harmless.  *See, e.g., Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (an ALJ's decision is "subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand will be the same.").  The VE testified that jobs existed that Plaintiff could have performed had the ALJ included a provision for changing positions every 15 minutes.  [Filing No. 7-2, at ECF p. 89-90.]  The ALJ asked the VE how a sit-stand option would impact the light jobs she had identified, and she testified that in her experience "better than half" of employers would be able to provide for a sit-stand option that allowed for position shifting every 15 minutes.  [Filing No. 7-2, at ECF p. 89-90.]  Moreover, as noted above, Plaintiff testified to her ability to stand for 30 minutes to one hour and her ability to sit for one hour.  [Filing No. 7-2, at ECF p. 73-74.]  Thus, even if the ALJ had further limited Plaintiff on sitting and standing, she still would have been able to work and would not have been found disabled.

### B.    Subjective symptom assessment

Plaintiff also argues that the ALJ failed to include any reasoning or discussion of Plaintiff's subjective symptoms as required by SSR 16-3p.  [Filing No. 9, at ECF p. 25.]  The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]"  SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).  In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  [Filing No. 7-2, at ECF p. 40.]  Plaintiff argues that the ALJ's decision included no discussion of the factors set forth in SSR 16-3p.  [Filing No. 9, at ECF p. 28.]  For instance, Plaintiff claims that the ALJ did not address how Plaintiff's activities of daily living were inconsistent with her impairments.  Plaintiff notes that she reported having difficulty with personal care due to arm pain, inability to raise her arm, documented limited range of motion in her shoulders, decreased strength in her bilateral upper extremities, decreased range of motion in her neck, and numbness and tingling in her fingers.

[Filing No. 9, at ECF p. 28 (citing Filing No. 76, at ECF p. 27; Filing No. 7-7, at ECF p. 27-28, 124-25, 151, 183; Filing No. 7-8, at ECF p. 33, 46, 58-59).]  In addition, Plaintiff argues that while the ALJ acknowledged the various pain medications Plaintiff had been prescribed, she did not give weight to the stronger medications, such as Toradol and lidocaine patch, did not note that Plaintiff reported gabapentin and Flexeril were not helping her symptoms, and did not acknowledge that joint injections provided only 20-30% relief.  [Filing No. 9, at ECF p. 28.]

However, the ALJ reasonably evaluated the consistency of Plaintiff's subjective statements with the rest of the evidence in the record.  Furthermore, the ALJ directly referenced the majority of the evidence Plaintiff claims the ALJ ignored.  The ALJ noted that Plaintiff indicated she has arm pain that made it difficult for her to attend to personal care needs.  [Filing No. 7-2, at ECF p. 39.]  The ALJ summarized Plaintiff's emergency department treatment at Indiana University Methodist Hospital for her neck pain, including Toradol and a lidocaine patch.  [Filing No. 7-2, at ECF p. 44.]  But the ALJ found that Plaintiff's pain diminished, that she was able to increase her range of motion, and that she was ultimately discharged with prescriptions for ibuprofen and baclofen 10 mg once daily and told to follow up with her physician. In addition, the ALJ described Plaintiff's report to her physician at that follow up appointment indicating that facet joint injections had reduced her pain by about 20 to 30%. [Filing No. 7-2, at ECF p. 44.]  The ALJ's discussion of this evidence throughout the decision sufficiently showed that she considered the evidence in her RFC assessment.  Plaintiff has not shown otherwise.

Finally, Plaintiff argues that the ALJ also erred in finding that Plaintiff attended only one physical therapy session.  [Filing No. 9, at ECF p. 28.]  The Commissioner concedes this point and acknowledges that the ALJ erred by stating Plaintiff had attended one physical therapy

session, rather than four.  [Filing No. 12, at ECF p. 11.]  However, the Commissioner argues that

this error is harmless because Plaintiff did not explain how it—or any of the other alleged

errors—affected the outcome of her case.  [Filing No. 12, at ECF p. 11.]  While Plaintiff argues

that the ALJ erred by not considering her testimony about difficulties with personal care, she

does not explain how such consideration would have changed the ALJ's decision.  The ALJ

provided for many additional limitations and restrictions in Plaintiff's RFC.  For instance, the

ALJ included reaching, handling, and fingering restrictions to account for Plaintiff's complaints

of shoulder and neck pain, and Plaintiff made no attempt to explain how those limitations were

insufficient.  Similarly, although Plaintiff generally claims throughout her initial brief that the

ALJ misinterpreted evidence and failed to build a logical and accurate bridge between the

evidence and her decision, Plaintiff has not tied the alleged errors to any actual impact on her

RFC of the ALJ's assessment.  *See, e.g., Wise v. Colvin*, No. 1:14-v-988-SEB-MJD, 2015 WL

1969364, at *5 (S.D. Ind. Apr. 30, 2015) ("As the Supreme Court has noted, the burden of

showing that an error is harmful normally falls upon the party attacking the agency's

determination.  In addition, the ALJ in this case concluded his opinion at step four.  Hence, at all

phases of the sequential evaluation process in this case the burden was on Plaintiff to show that

she was disabled."  (Internal citations and quotation marks omitted)).

Moreover, the Commissioner expressly raised in her response brief that Plaintiff failed to

explain how any error impacted Plaintiff's RFC or the ALJ's finding.  Yet Plaintiff still failed to

draw any link between the alleged error and the ALJ's decision or otherwise craft an argument to

address the Commissioner's argument in her reply.  [Filing No. 13.]  Plaintiff simply reiterates,

without elaborating, her contention that "[b]ecause the ALJ misinterpreted the evidence, she

failed to build a logical and accurate bridge between the evidence and her decision to discount

[Plaintiff's] allegations." [Filing No. 13, at ECF p. 4.]  This failure to explain how the alleged

error actually harmed Plaintiff—after the Commissioner specifically flagged that issue—

undermines her argument.  *See, e.g., Fair Housing Center of Central Indiana, Inc. et al v.*

*Rainbow Realty Group, Inc. et al*, No. 1:17-cv-1782-JMS-TAB, 2022 WL 6158365, at *2 (S.D.

Ind. Oct. 7, 2022) ("Relatedly, '[a] litigant who fails to press a point by supporting it with

pertinent authority, or by showing why it is a good point despite a lack of supporting authority or

in the face of contrary authority, forfeits the point.'"  (quoting *Mwangangi v. Nielsen*, __ F. 4th

__, 2022 WL 4244594, at *12 (7th Cir. Sept. 15, 2022)).   Because the ALJ provided substantial

support for her subjective symptom analysis, and Plaintiff has not shown otherwise, remand is

not warranted.

## IV.     Conclusion

Because the ALJ's findings were supported by substantial evidence, Plaintiff's request for

remand [Filing No. 9] should be denied.  Any objection to the magistrate judge's Report and

Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure

to file timely objections within 14 days shall constitute waiver of subsequent review absent a

showing of good cause for such failure.

    Date: 10/14/2022

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

11