UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELIA L. D. [1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-00048-JPH-TAB |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER OVERRULING OBJECTION AND ADOPTING
REPORT & RECOMMENDATION**

Plaintiff Sheila D. sought judicial review of the Social Security Administration's decision denying her petition for disability insurance benefits. The Magistrate Judge recommended that the ALJ's opinion be affirmed because Plaintiff did not show that any errors prejudiced her. Plaintiff objected to that recommendation. For the reasons below, Plaintiff's objection is **OVERRULED**, dkt. [16], and the Court **ADOPTS** the Magistrate Judge's report and recommendation, dkt. [15]. The ALJ's decision is **AFFIRMED**.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
# Facts and Background[2]

On October 28, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on April 1, 2019. Plaintiff also filed a Title XVI application for supplemental security income. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2019, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: cervical spine degenerative disease with radiculopathy and lymphadenopathy, diabetes mellitus (DM), left shoulder dysfunction, diabetic polyneuropathy, asthma, and persistent depressive disorder with dysthymic syndrome with mild to moderate anxious distress. Dkt. 7-2 at 34.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations.

---

[2] The Court relies on the report and recommendation's factual background, dkt. 15 at 2–3, which Plaintiff did not object to, see dkt. 16.

The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), but with a long list of additional limitations:

> [Plaintiff] can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead, and occasionally push and pull. She can frequently reach forward or to the side, handle, finger, and feel. She can never operate foot controls. She can have no more than occasional exposure to vibration, environmental irritants, and poorly ventilated areas. She must avoid all uses of hazardous machinery and all exposure to unprotected heights. She can perform work that does not involve driving or operating a motorized vehicle to perform job functions. She can perform unskilled work involving simple, routine, and repetitive tasks. She can perform short cycle tasks, in which the same routine tasks are performed over and over according to set procedures, sequence, or pace. She can perform work that does not involve complex decision-making or complex written or verbal communication. She can perform unskilled work that can be learned in thirty days or less. She can perform work independently with end of day production goals. She can never count money or make change. She can never perform tandem tasks or teamwork. She can perform work that does not involve fast-paced assembly line production requirements. She can have occasional brief interactions with supervisors, coworkers, and the general public. She can tolerate no more than occasional routine workplace changes. She can tolerate normal supervisory interaction, including, for example, performance appraisals, corrections, instructions, and directives as necessary. She can tolerate interactions to receive instructions and for task completion of simple, routine, and repetitive work. She can exercise judgment commensurate with the performance of simple, routine, repetitive work.

Dkt. 7-2 at 38.  At step four, the ALJ concluded that Plaintiff had no past relevant work.  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff could perform, including marker, garment sorter, and odd piece checker.  The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff filed a general objection to the Magistrate Judge's recommendation:

> Plaintiff respectfully objects to the findings of the Magistrate Judge and requests that this Court reject the Report and Recommendation and award benefits, or, in the alternative, remand this case for further proceedings consistent with the arguments set for in Plaintiff's briefs.

Dkt. 16 at 1.[3]

## II.
## Applicable Law

"The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations."  *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)).  If a party objects to the recommendation, the "district judge must determine de novo any part of the

---

[3] Objections to recommendations must "specify each issue for which review is sought." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741–42 (7th Cir. 1999) (explaining Fed. R. Civ. P. 72(b)(2)).  In order to not risk waiver in future cases, counsel should ensure that objections "tell the district judge—who, under 28 U.S.C. § 636(b)(1) must make the final decision and enter judgment—what *issues* the parties actually dispute."  *Id.*

magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at step four to determine whether the claimant can perform

her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

### III.
### Analysis

The Magistrate Judge recommended affirming the denial of benefits because neither of Plaintiff's arguments required remand to the ALJ. Dkt. 15.

#### A. Playing Doctor

Plaintiff argues that the ALJ "played doctor" in evaluating the opinions of two consulting physicians and finding her "capable of light work, including the ability to frequently stand and/or walk." Dkt. 9 at 21. The Commissioner responds that the ALJ reasonably evaluated those physicians' opinions. Dkt. 12 at 7–8. The Magistrate Judge recommended finding no reversible error on this issue because the ALJ reached a reasonable conclusion after considering the evidence. Dkt. 15 at 6–7.

The ALJ found Plaintiff capable of light work, dkt. 7-2 at 38, which requires the ability to stand or walk for about six hours in an eight-hour workday, SSR 83-10. In reaching that conclusion, the ALJ considered opinions from consulting physicians Jason Powell and Jerryl Simmons. Dkt. 7-2 at 40, 42. Dr. Powell opined that Plaintiff has "problems with walking, standing, or

6

sitting"; "can stand for 10–15 minutes . . . before needing to change positions"; and "can walk 1 block before needing to rest." Dkt. 7-7 at 79. He therefore opined that she "likely CANNOT stand, walk, lift, carry objects, sit, or use both of the hands well enough to function in a work environment." *Id.* at 80. Dr. Simmons noted that Plaintiff had poor balance, could walk for one block, and was "not able to walk on bilateral heels and bilateral toes and perform tandem walk." Dkt. 7-7 at 106. Dr. Simmons then opined that Plaintiff could work while sitting but did not opine about her ability to stand or walk during a workday. *Id.* at 109.

The ALJ found "unpersuasive" Dr. Powell's opinion that Plaintiff couldn't work because it was unsupported by Dr. Powell's own examination findings and was "inconsistent with the medical evidence of record." Dkt. 7-2 at 40. The ALJ cited two examples: (1) Dr. Powell limited Plaintiff to lifting only ten pounds even though she showed no signs of reduced strength, and (2) Dr. Powell limited Plaintiff "to brief periods sitting down" despite the physical examination's finding of "only mild musculoskeletal abnormalities." *Id.* at 40–41. The ALJ then agreed with Dr. Simmons that Plaintiff could "frequently sit and handle objects." *Id.* at 42.

The Magistrate Judge's report and recommendation properly analyzed the ALJ's opinion. The ALJ described the doctors' "opinions in considerable detail" and then found Dr. Powell's medical opinions unpersuasive. Dkt. 15 at 4–5. And, instead of relying on "general reasons" alone, the ALJ provided two "examples of how Dr. Powell's examination was unsupported by the [physical

7

examination] results or inconsistent with the rest of the medical record." *Id.* at 5 (recounting the ALJ's examples). The ALJ also addressed Dr. Simmons's examination and summarized his findings, including areas in which Plaintiff's physical condition was "normal." *Id.* In short, as the Magistrate Judge explained, the ALJ evaluated and permissibly discounted the consulting physicians' opinions based on medical evidence in the record. *Id.* at 4–6 (citing *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Nevertheless, Plaintiff argues that the ALJ "cherry picked" evidence from the physicians' opinions and "played doctor" by dismissing them in favor of her own opinions. Dkt. 9 at 21–24. But the ALJ did not interpret complex medical evidence without a doctor's assistance or independently determine the severity of any medical condition. *See Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022) ("[A]n ALJ may not 'play doctor' and interpret new and potentially decisive medical evidence without medical scrutiny."). Instead, she largely credited the physicians' medical observations while finding unpersuasive their subsequent opinions about work-related restrictions. *See* dkt. 7-2 at 40–42. The ALJ thus did not make medical findings but fulfilled her duty to calculate Plaintiff's RFC by determining whether opinions about Plaintiff's ability to work were "supported by other evidence in the record." *Karr*, 989 F.3d at 512; *see Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (ALJ did not "play doctor" in determining whether the claimant's depression prevented her from performing light work). Indeed, "an ALJ is required to determine the weight a nontreating

8

physician's opinion deserves by examining how well [he] supported and explained his opinion, whether his opinion is consistent with the record, . . . and any other factor of which the ALJ is aware." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

Remand is therefore not required on this basis.

## B. Subjective Symptom Assessment

Plaintiff argues that the ALJ did not adequately address how her "professed activities of daily living" and issues with pain affected her ability to work. Dkt. 9 at 28–29. The Commissioner responds that the ALJ considered the evidence and imposed appropriate restrictions on Plaintiff's ability to work. Dkt. 12 at 10–11. The Magistrate Judge recommended finding no reversible error on this issue because the ALJ "reasonably evaluated the consistency of Plaintiff's subjective statements with the rest of the evidence in the record." Dkt. 15 at 9.

The ALJ applies a two-prong test to weigh a claimant's subjective symptoms. SSR 16-3p. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." *Id.* at *2; *see also* 20 CFR § 416.929. Second, if such an impairment is found, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* at *3. If there is a conflict between the plaintiff's description and the objective medical evidence presented, the ALJ

9

must consider "other relevant evidence in the individual's case record" to resolve the conflict. SSR 16-3p, at *4; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). An ALJ's subjective symptom evaluation is a credibility determination entitled to special deference and will be reversed only if "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Plaintiff identifies several subjective symptoms that she claims the ALJ inadequately addressed, including arm pain, inability to raise her arm, limited shoulder range of motion, decreased neck range of motion, numbness and tingling in her fingers, and limited pain relief. Dkt. 9 at 28. But as the Magistrate Judge explained, the ALJ "directly referenced the majority of" that evidence and "considered [it] in her RFC assessment." Dkt. 15 at 9 (citing dkt. 7-2 at 39). For example, the ALJ recognized Plaintiff's pain, but explained that she was able to get partial relief at Indiana University Methodist Hospital and "was able to increase her range of motion." *Id.* (citing dkt. 7-2 at 43–44). The ALJ then calculated an RFC that accounted for Plaintiff's "upper back and neck pain," "mild left shoulder dysfunction," and "numbness and tingling in her extremities." Dkt. 7-2 at 46.

For those reasons, the Magistrate Judge found only one error—the ALJ said that Plaintiff had attended only one physical therapy session when she had attended four. Dkt. 15 at 9. But Plaintiff has not explained how the additional physical therapy could have affected the RFC determination. *See* dkt. 9 at 28; dkt. 13 at 4.

10

Otherwise, the ALJ's factual determinations were not "patently wrong." *Burmester*, 920 F.3d at 510.  And there is no reversible error in the ALJ's consideration of Plaintiff's subjective symptoms in the RFC calculation.  The ALJ addressed most of those symptoms by evaluating their seriousness and responsiveness to treatment and then crafting an RFC.  *See* dkt. 15 at 9–10; *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("The ALJ is not required to address every piece of evidence . . . but must provide a 'logical bridge' between the evidence and his conclusions.").  The ALJ's determination was therefore "reasoned and supported by substantial evidence" because she identified "inconsistencies between . . . subjective complaints and the record" and "provide[d] rationales to support [her] conclusions."  *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278–80 (7th Cir. 2022).  That is enough to build the required logical bridge between the evidence and the ALJ's conclusions.  *See id.* (The Court does not "undertake a *de novo* review" but "merely examine[s] whether the ALJ's determination was reasoned and supported."); *Gedatus*, 994 F.3d at 901 ("Despite [Plaintiff's] colorable arguments, we will not reweigh the evidence.").

There is therefore no error requiring remand on this issue.

## IV.
## Conclusion

Plaintiff's objection to the Magistrate Judge's Report and Recommendation is **OVERRULED**, dkt. [16], and the Court **ADOPTS** the Report

11

and Recommendation, dkt. [15].  The Court **AFFIRMS** the ALJ's decision.

Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/30/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.